# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 19, 2016

Plaintiff-Appellee,

v

No. 325010
Baraga Circuit Court

BERNARD A. FISH, SR.,

LC No. 2013-001334-FC

Defendant-Appellant.

Before: TALBOT, C.J., and HOEKSTRA and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant, Bernard A. Fish, Sr., of two counts of armed robbery,[1] two counts of extortion,[2] one count of impersonating a peace officer to commit a crime,[3] and two counts of unlawful imprisonment.[4] He appeals as of right. We affirm Fish's convictions. With regard to his sentences, we remand the matter for further proceedings.

Suspecting that an active marijuana grow operation existed at a house in Watton, Fish and his nephew, Donovan Waupoose, decided to rob the house of marijuana and cash. Fish planned to conduct the robbery, and Waupoose planned to drive a truck and help load the marijuana. When Fish approached the house, he encountered two men who had recently purchased the property. These men were not actively growing marijuana, but instead, were repairing the existing structure and planning to grow medicinal marijuana in the future. Fish, brandishing a BB gun, told the victims that he was a United States Marshal and was raiding the house. After Waupoose arrived in the truck, Fish gave his BB gun to Waupoose. While Waupoose held the men with the BB gun, Fish searched the house. Fish found no useable marijuana or cash. He did, however, find a real handgun. Fish used this handgun to threaten the victims. He demanded that they contact a family member by telephone. Fish told this family member that the victims were being held on $5,000 bond each, and demanded payment. Shortly

---

[1] MCL 750.529.

[2] MCL 750.213.

[3] MCL 750.215(3).

[4] MCL 750.349b.

-1-

after ending this call, Fish marched the victims at gunpoint to a field. Fish left the victims and fled with Waupoose in the truck. The entire incident was captured on a multi-camera surveillance system.

Unsatisfied with the result of this robbery, Fish asked Waupoose to contact a friend and ask to purchase $15,000 worth of marijuana. Fish had no such sum of money, and instead, planned on conducting another robbery. Waupoose organized the meeting to take place at a bar in Long Lake, Wisconsin. Fish met the victim in his car and forced him to travel to a remote area. Fish stole the car, which contained several pounds of marijuana, and after driving away in the stolen car, called Waupoose. Waupoose met Fish and picked him up, leaving the stolen car behind.

After the robberies, Fish fled to several states, leading federal authorities on a manhunt. He was eventually captured, and when he was, told authorities that the robbery of the house in Watton was staged. According to Fish, the victims, Fish, and the man he robbed in Wisconsin all planned to fake a robbery at the house. The four planned to split the proceeds. Fish testified to this version of events at trial. The jury convicted Fish as charged.

## I. SUFFICIENCY OF THE EVIDENCE

Fish first contends that there was insufficient evidence to sustain his convictions. We disagree. As this Court has recently explained:

> In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor. The question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses.[5]

Fish does not contest any particular element or elements of the crimes of which he was convicted. Rather, he asserts a general challenge: that various witnesses who testified to Fish's criminal acts were not credible. Thus, he contends there was "insufficient credible evidence" to support his convictions. It is well-established in Michigan law that credibility determinations "are made by the jury which heard the testimony and observed the witnesses, and an appellate court will not substitute its judgment for that of the jury."[6] The testimony of numerous witnesses

---

[5] *People v Bosca*, 310 Mich App 1, 16-17; 871 NW2d 307 (2015) (quotation marks, brackets, and citations omitted).

[6] *People v Whalen*, 129 Mich App 732, 745; 342 NW2d 917 (1984). See also *People v Mardlin*, 487 Mich 609, 626; 790 NW2d 607 (2010) ("The jury is the sole judge of the facts; its role includes listening to testimony, weighing evidence, and making credibility determinations."); *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) ("It is the province of the jury to determine questions of fact and assess the credibility of witnesses."); *People v Noble*, 238 Mich

supported Fish's convictions. The jury clearly found this testimony credible, and this Court will not interfere with the jury's credibility determinations. Fish's argument lacks merit.

## II. EVIDENTIARY ERRORS[7]

Fish raises several preserved claims of evidentiary error. A trial court's decision to admit evidence is reviewed for an abuse of discretion.[8] Preliminary questions of law, "such as whether a rule of evidence or statute precludes the admission of the evidence[,]" are reviewed de novo.[9]

### A. MRE 404(B)

Fish first argues that the trial court erred by allowing the prosecutor to admit evidence of the second robbery, an uncharged crime, pursuant to MRE 404(b). We disagree.[10] "Before other-acts evidence may be introduced, the prosecution must satisfy a three-part test: (a) there must be a reason for its admission other than to show character or propensity, (b) it must be relevant, and (c) the danger of undue prejudice cannot substantially outweigh its probative value, especially if there are other means of proof."[11] Regarding the first prong, the prosecutor offered a variety of reasons why evidence of the second crime was admissible other than to demonstrate character or propensity. The trial court agreed that the evidence was admissible to demonstrate Fish's intent, scheme, plan, and motive. These purposes are all permitted by MRE 404(b). Thus, evidence of the second crime satisfied the first prong of the analysis.

"Nevertheless, the prosecution may not mechanically recite a permissible reason without explaining how the evidence is relevant."[12] Particularly given Fish's oft-stated defense, that the first crime was actually a "fake robbery," Fish's intent was a highly relevant issue. On appeal, Fish argues that the second robbery was not sufficiently similar to the first to be considered relevant. He contends that while both crimes bore general similarities, i.e., that each was an armed robbery, there were not enough specific similarities to survive the requirements of MRE

App 647, 657; 608 NW2d 123 (1999) ("This Court does not interfere with a jury's credibility determinations.").

[7] Fish attempts to couch his claims of evidentiary error as constitutional in magnitude. Errors in the admission of evidence are nonconstitutional. *People v Whittaker*, 465 Mich 422, 426; 635 NW2d 687 (2001).

[8] *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003).

[9] *Id*.

[10] The trial court also concluded that even if the evidence was not admissible under MRE 404(b), it was admissible as part of the res gestae of the charged criminal conduct. In light of our Supreme Court's recent decision in *People v Jackson*, 498 Mich 246; 869 NW2d 253 (2015), this conclusion was in error. In *Jackson*, our Supreme Court explained that there is no res gestae exception to MRE 404(b). *Id*. at 274-275. This error is of no consequence, however, because as will be explained, the evidence was admissible under MRE 404(b).

[11] *People v McGhee*, 268 Mich App 600, 609; 709 NW2d 595 (2006).

[12] *Id*. at 610.

404(b).  As our Supreme Court has explained, "[d]ifferent theories of relevance require different degrees of similarity between [other] acts and the charged offense to warrant admission."[13] When the purpose of admitting the evidence is to disprove innocent intent, evidence of other events "need *only* be of the same general category as the charged offense."[14]  Clearly, the second crime was of the same general category as the charged offense, and thus, was sufficiently similar to be relevant.[15]  Further, "[t]he acts or events need not bear striking similarity to the offense charged if the theory of relevance does not itself center on similarity."[16]  Here, the theory of relevance need not be premised on mere similarity because the second crime was committed so soon after the first.[17]  Accordingly, the second prong of the analysis was satisfied.

Fish also contends that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.  However, his argument is premised on a belief that the evidence was admitted to show his propensity to commit crime.  As discussed, the evidence was not admitted to demonstrate propensity.  And in any case, the trial court instructed the jury regarding the proper use of this evidence, stating:

> For example, you must not decide that it shows that the Defendant is a bad person, or that he is likely to commit crimes.  You must not convict the Defendant here because you think he is guilty of other bad conduct.  All the evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crimes, or you must find him not guilty.

"It is well established that jurors are presumed to follow their instructions."[18]  Any danger of unfair prejudice was vitiated by the trial court's instructions.  As each prong of MRE 403(b) was established, the trial court did not abuse its discretion by admitting evidence of the second robbery.

---

[13] *Mardlin*, 487 Mich at 622.

[14] *Id*. at 622-623.

[15] And in any case, as the trial court noted, there were many specific similarities between the crimes.  In both instances, Fish acted as the robber, while Waupoose acted as the driver.  In both crimes, Fish hoped to steal a large quantity of marijuana.  Both crimes also involved the use of a gun to coerce the victims.

[16] *Mardlin*, 487 Mich at 620.

[17] See *id*. at 617 ("If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance.").

[18] *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

## B. PRELIMINARY EXAMINATION TESTIMONY

Fish next contends that the trial court erred by allowing one victim's preliminary examination testimony to be read into evidence pursuant to MRE 804(b)(1). This rule allows admission of prior testimony if certain requirements are met and the witness is unavailable to testify at trial.[19] A witness may be deemed unavailable if he or she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown."[20]

Fish contends that the prosecutor did not satisfy the due diligence requirement of MRE 804(a)(5). "The test for whether a witness is 'unavailable' as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial."[21] "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it."[22] The record demonstrates that the witness, who lived in Illinois, had led the prosecutor to believe that he would attend the trial for many months, only to change his mind a week before trial. The prosecutor contacted several relatives, hoping these relatives would persuade the witness to appear. The prosecutor also sought an order of rendition from a court in Illinois, but because of the short timeframe, the order could not be obtained. Under the circumstances, the trial court did not abuse its discretion when it concluded that the prosecutor made diligent efforts to procure this witness.

## C. WAUPOOSE'S TESTIMONY

Fish contends that the trial court erred by denying his motion to exclude Waupoose's testimony. The basis of the motion, and of Fish's argument on appeal, is Fish's belief that Waupoose accessed materials in Fish's possession, and after viewing this information, changed his story to implicate Fish. Fish argues that this "unusual situation" violates his due process rights. He offers no authority that would support such a contention. Further, it is clear that the true basis of Fish's argument is that Waupoose's testimony was not credible. This is no reason to exclude the testimony. Credibility determinations are for the jury to decide after hearing all of the evidence, not for the trial court to make under the guise of a motion in limine. The trial court did not abuse its discretion by denying the motion.

---

[19] The rule provides that "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" is an exception to the prohibition against hearsay, so long as the declarant is unavailable at trial. MRE 804(b)(1).

[20] MRE 804(a)(5).

[21] *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

[22] *Id*.

## III.  PROSECUTORIAL ERROR[23]

Finally, Fish raises several unpreserved claims of prosecutorial error.  We review unpreserved claims of prosecutorial error for plain error affecting Fish's substantial rights.[24]

Fish contends that the prosecutor erred by admitting evidence that a SWAT team was utilized in searching Waupoose's home.  He argues that this evidence was irrelevant and unfairly prejudicial, and thus, the prosecutor should not have elicited this fact at trial.  "A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence."[25]  There is no evidence, nor any argument by Fish, that the prosecutor did not act in good faith when he elicited this fact.  Thus, Fish has not demonstrated prosecutorial error.

Fish contends that the prosecutor committed error by asking the jury to infer that certain witnesses did not appear because they may have had something to hide.  Prosecutors "are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case."[26]  Relying on testimony admitted at trial, the prosecutor noted that each of these witnesses may have been involved in illegal activities and thus did not wish to appear to testify.  The prosecutor's arguments simply asked the jury to draw reasonable inferences from the facts presented at trial, and thus, were not improper.

Fish argues that the prosecutor committed error by failing to elicit every detail of Waupoose's plea agreement.[27]  It is true that a prosecutor "must, upon request of defense counsel, disclose to the jury the fact that immunity or a plea to a reduced charge has been granted to the testifying accomplice or coconspirator."[28]  Assuming defendant made such a request,[29] the prosecutor complied, eliciting the fact that Waupoose was testifying to an agreement with the

---

[23] Because none of these claims rise to the level of extreme circumstances warranting use of the phrase "prosecutorial misconduct," we refer to the claims as those of prosecutorial error.  See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

[24] *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001).

[25] *People v Dobek*, 274 Mich App 58, 76; 732 NW2d 546 (2007).

[26] *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

[27] Specifically, Fish contends that the prosecutor was required to elicit the potential penalties Waupoose faced under his plea agreement, as compared to the charges he could have faced absent the agreement.

[28] *People v Mumford*, 183 Mich App 149, 152; 455 NW2d 51 (1990) (quotation marks, brackets, and citation omitted).

[29] It is not at all clear that any such request was made.  Rather, Fish seems to believe that the prosecutor had an affirmative duty to make such a disclosure to the jury under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).  While *Brady* requires a prosecutor to disclose exculpatory evidence to a defendant, it does not require any disclosures to be made to the jury.

prosecutor, and that if he did not provide truthful testimony, additional charges would be reinstated. Nor is there any indication that Fish was prevented from eliciting any additional details he wished to have disclosed to the jury on cross-examination.[30] Fish fails to demonstrate any error.

Fish contends that the prosecutor erred by suggesting that Fish's flight was evidence that he knew he was guilty because Fish's state of mind was not a fact in evidence. Again, prosecutors "are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case."[31] The prosecutor did not err by asking the jury to draw a reasonable inference from the fact of Fish's flight.

Fish contends that the prosecutor erred by eliciting the fact that Waupoose agreed to provide truthful testimony as part of his plea agreement. Although a prosecutor may not vouch for the credibility of his witnesses by insinuating special knowledge of truthfulness, the mere reference to the fact that a witness has agreed to provide truthful testimony as part of a plea agreement is not error.[32]

Finally, Fish contends that the prosecutor erred by arguing that Fish's version of events was supported only by his own testimony, and by referring to his theory and counsel's closing argument as "yarn." Fish argues that these comments unfairly denigrated Fish and his theory of defense. The prosecutor was clearly arguing that Fish's story was not believable. "A prosecutor may argue from the facts that a witness is credible or that a witness is not worthy of belief."[33] Further, "prosecutors may use 'hard language' when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms."[34] The prosecutor's argument hardly rises even to the level of "hard language" that would still be permissible.

Fish also argues that while perhaps none of the above claims of error warrant reversal, their cumulative effect deprived him of a fair trial. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal."[35]

---

[30] Cf. *Mumford*, 183 Mich App at 154 (concluding that the trial court abused its discretion by refusing to allow the defendant to cross-examine a witness regarding the sentencing consideration he received for his testimony).

[31] *Seals*, 285 Mich App at 22.

[32] *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). See also *People v Jackson (On Reconsideration)*, ___Mich App___, ___; ___NW2d___ (Docket No. 322350, December 3, 2015), slip op at 9 ("A prosecutor may, however, make reference to a plea agreement containing a promise of truthfulness . . . .").

[33] *People v Unger*, 278 Mich App 210, 240; 749 NW2d 272 (2008).

[34] *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996).

[35] *Dobek*, 274 Mich App at 106.

## IV.  STANDARD 4 BRIEF ON APPEAL

Fish raises an additional eight issues in a pro se brief filed pursuant to Administrative Order No. 2004-6, Standard 4.  We have carefully reviewed each of the issues raised by Fish, and conclude that the first seven are without merit.  The eighth issue raised by Fish claims error under our Supreme Court's recent decision in *People v Lockridge*.[36]  Under *Lockridge*, Fish is entitled to a *Crosby*[37] remand.

In *Lockridge*, our Supreme Court held that Michigan's statutory sentencing guidelines scheme violated the Sixth Amendment because it "allows judges to find by a preponderance of the evidence facts that are then used to compel an increase in the mandatory minimum punishment a defendant receives."[38]  The Court remedied this constitutional flaw by holding that the guidelines "are advisory only."[39]  Thus, while trial courts are still required to assess "the highest number of points possible . . . for all [offense variables ("OVs")], whether using judge-found facts or not[,]" the resulting sentencing guidelines range is advisory, and "the sentencing court may exercise its discretion to depart from that guidelines range without articulating substantial and compelling reasons for doing so."[40]

In certain circumstances, Defendants sentenced prior to *Lockridge* are entitled to some measure of relief.  Defendants, such as Fish, who did not preserve his or her claim of error must demonstrate the existence of plain error before resentencing is required.[41]  *Lockridge* holds that if the facts admitted by the defendant or found by the jury are not sufficient "to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced[,]" and the sentence was not an upward departure from the applicable guidelines range, the defendant "can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry."[42]

Here, Fish's total OV score was 85 points.  Any score below 80 points would place him in a lower cell.[43]  The trial court assessed 15 points to OV 1 on the basis that Fish pointed Heiser's firearm at a victim.  However, the jury's verdict does not support this conclusion.  Indeed, none of Fish's convictions required him to possess a firearm at all.  Nor did Fish admit to pointing the gun at a victim.  Without these points, Fish's score would place him in a lower cell.

---

[36] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

[37] *United States v Crosby*, 397 F 3d 103 (CA 2, 2005).

[38] *Lockridge*, 498 Mich at 399.

[39] *Id*.

[40] *Id*. at 392 and n 28.

[41] *Id*. at 392-393.

[42] *Id*. at 395.

[43] MCL 777.62.

The trial court's sentence was not an upward departure.  Accordingly, Fish is entitled to a remand to the trial court to determine whether the constitutional error caused him prejudice.

In *Lockridge*, our Supreme Court adopted the remand procedure crafted in *United States v Crosby*.[44]  This procedure allows the trial court the opportunity to consider whether, now knowing that the sentencing guidelines are merely advisory, it would impose a materially different sentence.[45]  "If the trial court determines that the answer to that question is yes, the court shall order resentencing."[46]  The precise procedure is as follows:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing.  If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant.  Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence.[47]

We direct the trial court to follow this procedure.

## V.  CONCLUSION

Fish's convictions are affirmed.  With regard to Fish's sentences, we remand the matter to the trial court to follow the *Crosby* remand procedure.  We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Joel P. Hoekstra
/s/ Douglas B. Shapiro

---

[44] *Lockridge*, 498 Mich at 395-399.

[45] *Id*. at 397.

[46] *Id*.

[47] *Id*. at 398 (quotation omitted).